UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 2021-cr-10271-PBS |
| ALEXANDER GIANNAKAKIS | ) ) ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD DEPARTURE

The United States, through undersigned counsel, respectfully submits this sentencing memorandum and motion for upward departure. As outlined below, the government recommends a sentence of 48 months' incarceration followed by 36 months of supervised release. Whether imposed as a modest upward departure or variance, this sentence appropriately reflects the gravity of the defendant's crimes, will provide just punishment, and will serve to deter others from obstructing investigations involving hate crimes, acts of domestic terrorism, and other similar offenses.

### The Sentencing Guidelines

The government concurs with the guideline calculation set forth in the Presentence Investigation Report ("PSR"), except that it fails to apply two applicable Chapter Three enhancements to the base offense level for the underlying criminal offense (in this case, arson): a three-level victim-related enhancement because the defendant knew the underlying arsons were hate crimes, *see* USSG § 3A1.1(a), and a three-level grouping adjustment because the defendant obstructed the investigation of multiple arsons, *see* USSG § 3D1.4. Accounting for these

additional enhancements, the Total Offense Level is 21 and the Guidelines Sentencing Range is 37-46 months.[1]

**I.     The Guideline calculation should include a three-level victim-related adjustment pursuant to USSG § 3A1.1(a) because the defendant purposely obstructed a hate crime investigation.**

The defendant should receive a two-level enhancement pursuant to USSG § 3A1.1(a) because the underlying crimes — arsons of Jewish-affiliated institutions by the defendant's younger brother — were hate crimes, and the evidence proves the defendant was aware of his brother's hate crime motivation when he obstructed justice.

The defendant's base offense level is calculated by reference to the accessory after the fact guideline, USSG § 2X3.1.  According to that section, the base offense level is "6 levels lower than the offense level for the underlying offense [of arson]."  Where the offense level is calculated by reference to another guideline (a so-called "cross reference"), the Guidelines specify which enhancements and adjustments must be considered when calculating the offense level under the

---

[1] The defendant's crimes of conviction index to USSG § 2J1.2.  That section cross references to USSG 2X3.1 (the accessory after the fact guideline) if the resulting offense level is greater than the offense level calculated under § 2J1.2.  As part of the plea agreement in this case, the government agreed to dismiss Count One, which charged the defendant with lying to federal agents about a matter involving domestic terrorism (a crime that carries an enhanced, 8-year statutory maximum penalty).  Had the defendant been convicted of that offense, his § 2J1.2 offense level would have been higher than his § 2X3.1 offense level, due in large part to § 2J1.2's 12-level domestic terrorism enhancement.  Because the government has agreed to dismiss Count One, however, the § 2J1.2 cross reference applies.

According to the cross-referenced section, § 2X3.1, the base offense level is 18.  PSR ¶ 52.  In addition to the Chapter Three enhancements discussed in this section, the offense level is increased by 2 levels because the defendant attempted to escape from custody before sentencing and is decreased by 3 levels because the defendant has accepted responsibility for his crimes.  PSR ¶¶ 57, 59-60.  The defendant also satisfies the criteria for a 2-level zero-point offender reduction, PSR ¶ 61, although, as argued below, the government is moving for an upward departure because application of the zero-point offender reduction in this case substantially underrepresents the seriousness of the defendant's criminal history.  *See* USSG § 4C1.1 (n.3).

referenced guideline.  First, the Guidelines require that "the entire offense guideline (*i.e.*, the base offense level, specific offense characteristics, cross references, and special instructions)" be considered.  USSG § 1B1.5(a).  Second, the Guidelines state that "the adjustments in Chapter Three" must also be applied "except as otherwise *expressly provided*."  USSG § 1B1.5(c) (emphasis added).  Here, the accessory after the fact guideline does not expressly exclude Chapter Three Adjustments.[2]

Consistent with USSG § 1B1.5(c), courts have applied Chapter Three adjustments — including victim-related adjustments — when calculating the offense level under USSG § 2X3.1, where the defendant knew or reasonably should have known the facts underlying the adjustment.  For example, in *United States v. Gonzalez*, 449 Fed. Appx. 841, 843, 2011 WL 6347871, *1 (11th Cir. 2011), the defendant was convicted of obstructing a robbery investigation.  At sentencing, the district court applied the accessory after the fact Guideline (§ 2X3.1).  *Id*. at *2-3.  In calculating the offense level applicable to the underlying robbery, the district court applied a six-level

---

[2] Application Note 1 to USSG § 2X3.1 defines the term "underlying offense" as it is used in the guideline, and further states: "Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant."  The Probation Officer concluded that this Application Note – specifically, the fact that the note mentions only the base offense level and specific offense characteristics – constitutes an express directive *not* to consider Chapter Three enhancements when calculating the underlying offense level.  *See* PSR Addendum at p.35.  The government respectfully disagrees.

To begin with, USSG § 1B1.5 states that Chapter Three enhancements must be considered except as otherwise "expressly provided."  The word "expressly" is synonymous with explicitly, specifically, or particularly.  Application Note 1 to USSG § 2X3.1 does not specifically, explicitly, or particularly state that Chapter Three enhancements do not apply.  Moreover, Application Note 1 to § 2X3.1 cites (with approval) to Application Note 10 to USSG § 1B1.3 (relevant conduct), which broadly states that "[i]n the case of … accessory after the fact, the conduct for which the defendant is accountable includes **all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant**." (Emphasis supplied).  These application notes, together with the authorities cited in this section from the First Circuit and elsewhere, suggest that the Chapter Three enhancements *are* properly considered when calculating the offense level for the "underlying offense" under § 2X3.1.

enhancement under USSG § 3A1.2(c) for "creating a substantial risk of serious bodily injury to law enforcement" and a separate two-level enhancement under USSG § 3C1.2 for "reckless endangerment during flight," concluding the defendant was aware of, or reasonably should have been aware of, these aggravating circumstances when he obstructed the robbery investigation. *Id*. On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's offense level calculation, including the court's application of the Chapter Three enhancements. *Id*. at 845-46, *3-4. Similarly in *United States v. Harris*, 104 F.3d 1465 (5th Cir. 1997), the Fifth Circuit considered whether to apply an "official victim" enhancement under USSG § 3A1.2(a) to a defendant convicted of acting as an accessory after the fact to a bank robbery, ultimately concluding the enhancement did not apply because the defendant was unaware of and "not motivated by" the victim's official status. *Id*. at 1476. Had the evidence shown the defendant was aware of the robbery victim's official status when he acted as an accessory after the fact, therefore, the Fifth Circuit would have concluded that the "official victim" enhancement *did* apply under the accessory guideline.

These decisions are consistent with controlling First Circuit precedent holding that a person sentenced under USSG § 2X3.1 should be "sentenced as if he were an accessory after the fact to the substantive criminal offense or offenses about which he [has obstructed]." *United States v. Bova,* 350 F.3d 224, 229 (1st Cir. 2003). Similarly, the application notes to the relevant conduct guideline state that "[i]n the case of … accessory after the fact, the conduct for which the defendant is accountable includes *all conduct relevant to determining the offense level for the underlying offense* that was known, or reasonably should have been known, by the defendant." USSG § 1B1.3 (n.9) (emphasis added). Importantly, this precise language is cited with approval in the application notes to the accessory after the fact guideline. *See* USSG § 2X3.1 (n.1). Coupled with the cross-

reference rules set forth in USSG § 1B1.5, these authorities indicate the Guidelines are designed and intended to differentiate between various types and degrees of obstructive conduct by accounting for Chapter Three aggravating factors applicable to the underlying crimes — the presence of a hate crime motivation, a vulnerable victim, an official victim, the risk of serious injury to a law enforcement agent, etc. — that the defendant knew about or reasonably should have known about.

Here, there is overwhelming evidence that the defendant knew or reasonably should have known at the time of his obstructive conduct that the arsons were hate crimes sparked by his brother's antisemitism. As the PSR plainly notes, among other things, federal agents told the defendant that they were investigating a series of arsons at Jewish-affiliated institutions committed by his brother; they probed the defendant about his brother's apparent antisemitism (his motive for committing the arsons); and they asked about his brother's affiliation with violent extremist groups. PSR ¶¶ 23-24. In other words, it is clear the defendant had *actual knowledge* that the arsons under investigation were hate crimes — crimes motivated by anti-Jewish bias — prior to his obstructive conduct. Because the defendant was aware of his bother's hate crime motivation, a 3-level adjustment under USSG § 3B1.1(a) should be applied.

II. **The Guideline calculation should include a three-level grouping adjustment pursuant to USSG § 3D1.4 because the defendant's obstruction involved multiple arsons.**

Likewise, in order for the defendant's offense level to reflect "all conduct relevant to determining the offense level for the underlying [arson] offenses that was known, or reasonably should have been known, by the defendant," a three-level grouping adjustment must also be applied pursuant to USSG § 3D1.4. Here, the defendant's obstruction relates to not just one arson, but four separate arsons. The defendant knew this because that's what federal agents told him before he obstructed their investigation. PSR ¶¶ 23-24. Because the four underlying arsons

involve three separate victims (two Chabad Centers and a Jewish-affiliated business), they form three groups with equal offense levels under USSG § 3D1.2. These three groups correspond to three "units" within the meaning of § 3D1.4 and, thus, require a 3-level increase to the underlying offense level.

Without this grouping adjustment, the obstruction of multiple arsons or other serious crimes would be treated the same under the Guidelines as obstruction of a single arson – a result that is plainly at odds with the Guidelines (sections 1B1.5, 2X3.1 and 1B1.3, among others) and *United States v. Bova*, in which the First Circuit said that a person sentenced under § 2X3.1 must be sentenced as "an accessory after the fact to the substantive criminal offense or offenses about which he [has obstructed]. *Bova*, 350 F.3d at 229 (emphasis added); *see also Gonzalez*, 2011 WL 6347871 at *2 (applying grouping rules to underlying offense level calculation in sentencing governed by USSG § 2X3.1).

**The Government's Recommendation and Motion for Upward Departure or Variance**

I.  **The defendant's Criminal History Category is inadequate, and he should not be the beneficiary of a Zero-Point Offender reduction (USSG § 4A1.3(a))**

The defendant was convicted of an aggravated weapons offense in Sweden in 2022. PSR ¶ 68. Because it occurred overseas, this conviction does not contribute to the defendant's criminal history score. *See* USSG § 4C1.2(h) (excluding "foreign convictions" from Criminal History computation). As a result, the defendant has no criminal history points, he qualifies as a Zero-Point Offender, and he falls within Criminal History Category I. Because his Criminal History Category (or "CHC") is inadequate, and to avoid the defendant receiving a Zero-Point Offender windfall, an upward departure is warranted pursuant to USSG § 4A1.3(a).

In 2022, the defendant was living in Sweden with his then wife and their young child. PSR ¶ 37. In February of that year, he was arrested in connection with this case and detained by

Swedish authorities while the United States sought his extradition. *Id.* Months later, acting on a tip from the defendant's ex-wife, Swedish law enforcement discovered a bag belonging to the defendant that contained a 9mm semi-automatic handgun, several loaded magazines (including one extended magazine that held 34 rounds), a crossbow with arrows, and a bottle of chloroform. PSR ¶ 43. The defendant's possession of the weapons and ammunition was illegal under Swedish law. He was therefore charged with an aggravated weapons offense in July 2022, subsequently convicted, and sentenced to two years in prison. PSR ¶ 44. The defendant was represented by Swedish counsel throughout that case. PSR ¶ 68.

It is well established that a foreign conviction may provide the basis for an upward departure based on inadequacy the defendant's Criminal History Category. *See* USSG § 4A1.3(a)(2) (nothing that "prior offenses not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal convictions)" may provide the basis for an upward departure). Had the defendant's prior conviction occurred in the United States, it would have contributed 3 points to the defendant's criminal history score, *see* USSG § 4C1.1(a), thus placing him in Criminal History Category II. Assuming an offense level of 21, the corresponding sentencing range would be 41-51 months (as opposed to 37-46 months in CHC I). Accordingly, and because the defendant's foreign conviction is unquestionably reliable, the Court should depart upward and sentence the defendant in Criminal History Category II. *See United States v. Port*, 532 F.3d 753, 755 (8th Cir. 2008) (affirming upward departure from CHC I to CHC III in light of defendant's two foreign convictions, one of which predated the U.S. sentencing by more than a decade); *United States v. Fordham*, 187 F.3d 344, 346-47 (3d Cir. 1999) (in money laundering prosecution, affirming upward departure from CHC I to CHC II in light of defendant's conviction in Mexico

for possession of marijuana); *United States v. Korno*, 986 F.3d 166, 167-68 (7th Cir. 1993) (affirming upward departure from CHC II to CHC VI based on defendant's Canadian convictions).

Similarly, the defendant should not receive the benefit of a Zero-Point Offender reduction. A single criminal history point is enough to disqualify a defendant under the Zero-Point Offender guideline. *See* USSG § 4C1.1(a)(1). Consequently, defendants who have just one prior sentence — even if the sentence was less than 60 days or was fully suspended — are generally not eligible for Zero-Point Offender credit. Here, by contrast, the defendant was sentenced to 2 years in prison for an aggravated weapons crime. But for the fact that he committed this crime in Sweden, he would have at least one criminal history point and be ineligible for a § 4C1.1 adjustment altogether. Application of the Zero-Point Offender guideline under these circumstances is inconsistent with the guideline's overall purpose — to provide an additional benefit to individuals with dated or *no* criminal history — and a two-level upward departure is warranted. *See* USSG § 4C1.1 (n.2) (noting that an upward departure "may be warranted if an adjustment under this guideline substantially underrepresents the seriousness of the defendant's criminal history"); *United States v. Rolle*, 2024 WL 1704969 (S.D.N.Y. 2024) (denying defendant's motion for sentence reduction based on retroactive § 4C1.1 amendment due to defendant's foreign conviction, even though defendant had no criminal history points and otherwise satisfied Zero-Point Offender criteria).

Assuming the inclusion of the Chapter Three enhancements outlined above, the effect of the requested upward departure is two-fold: the defendant would be sentenced at offense level 23 instead of offense level 21, and within CHC II instead of CHC I. With these departures, the resulting guideline sentencing range is 51-63 months. A sentence of 48 months is below that range and represents a just sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

**II.     Irrespective of potential upward departures, the government's 48-month recommendation is supported by the factors enumerated in 18 U.S.C. § 3553(a).**

Should the Court choose not to adopt the government's request for an upward departure, a sentence of 48 months is still appropriate. Indeed, 48 months is only slightly higher than the 37- to 46-month guideline sentencing range calculated by the government – an upward variance that is more than justified by the defendant's foreign criminal record (which, absent an upward departure or variance, would not factor at all into the defendant's sentence).

The nature and circumstances of the offenses further support the government's recommendation. The defendant's crimes were not the product of a momentary lapse in judgment. They were the product of a deliberate plan spanning multiple days. When the FBI agents investigating the arsons first asked the defendant whether his brother kept property anywhere *other* than his parents' apartment in Quincy, the defendant said, "No." PSR ¶ 24. It was only after the agents specifically asked about a storage facility that the defendant mentioned a storage unit supposedly used by his parents. *Id*. When the defendant went there with the agents, he showed them only the unit containing his parents' belongings and specifically said there were no other locations where his brother kept his property. PSR ¶¶ 25-26. He deliberately concealed from them — and, indeed, lied to them about — a second unit at the very same facility containing important evidence concerning the ongoing arson investigation: his brother's anti-Semitic writings, t-shirts with swastikas on the front, and a bottle of cyanide. PSR ¶¶ 33-34. The next day, the defendant returned storage facility alone, disposed of the bottle of cyanide, and then left the United States. PSR ¶ 30. The government only learned about the second storage unit because the defendant's girlfriend, who was living in the United States, told agents about it months later. PSR ¶ 28.

To make matters worse, the defendant was aware from the beginning that the agents were investigating a series of arsons at Jewish institutions near Boston, that the fires were being

investigated as hate crimes, and that his brother was the suspected arsonist.[3] The defendant could not have known at that time that his brother had acted alone. Despite this, the defendant deliberately deceived the investigators, purposely thwarted their investigation, and destroyed evidence. The defendant's actions not only sidetracked a federal hate crime investigation and wasted incalculable resources, but they also caused the residents of the buildings that were burned — still reeling from the attempts to destroy their homes, their places of worship, and their businesses — to feel further victimized. A sentence of 48 months appropriately reflects the severity and the gravity of the defendant's crimes, and is sufficient but not greater than necessary to provide just punishment.

A 48-month sentence will also achieve specific deterrence. Over the past several years, the defendant has displayed a concerning willingness to commit crimes and engage in other troubling behavior. Since 2021, he has lied to federal investigators about a hate crime investigation; concealed and destroyed evidence in that same investigation; illegally possessed a semi-automatic handgun, ammunition, a crossbow, and a bottle of chloroform; and attempted to escape from Swedish custody. He also attempted to smuggle a note out of a Swedish jail in his daughter's diaper. PSR ¶ 42. This pattern of concerning and illegal behavior suggests the defendant is perhaps more likely to reoffend than other defendants with minimal or no criminal history. A 48-month sentence will help ensure that he doesn't.

---

[3] The government has separately argued that the defendant's brother's hate crime motivation (coupled with the defendant's knowledge of that motivation) and the fact that there were multiple arsons together warrant a 6-level increase to the underlying (arson) offense level. *See* pp. 2-6, *supra*. Should the Court reject that analysis, these same factors justify an upward variance and, in conjunction with the other § 3553(a) factors, imposition of a 48-month sentence.

Perhaps more importantly, the sentence recommended by the government will satisfy the need for general deterrence. Unfortunately, hate crimes and other crimes motivated by ethnic and religious bias have become far too common. While the defendant himself did not commit a hate crime, he did knowingly obstruct a hate crime investigation. Through its sentence, therefore, the Court has an opportunity to send a much-needed deterrent message to individuals inclined to commit hate crimes, aid and abet hate crimes, or obstruct hate crime investigations. The sentence recommended by the government is sufficient, but not greater than necessary, to achieve that important purpose.

## Conclusion

For the reasons set forth above, the government respectfully asks the Court to sentence the defendant to 48 months in prison followed by 36 months of supervised release.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY

By:  */s/ Jason A. Casey*
Jason A. Casey
Assistant U.S. Attorney

Date: March 4, 2025

## CERTIFICATE OF SERVICE

I hereby certify that these documents are being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Jason A. Casey*
Jason A. Casey
Assistant U.S. Attorney